ORIGINAL

*unsealed 6/5/08* KNH

**ORDERED SEALED BY COURT**

KNH

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

08 MJ 1756

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Magistrate Case No. _____ |
| Plaintiff, ) | COMPLAINT FOR VIOLATION OF: |
| v. ) | |
| JOSE ALBERTO MARQUEZ (1), ) aka Bat, ) JULIA MORONES (2), ) MARIA MADRIAGA (3), ) aka Kika, ) | Title 21, United States Code, Sections 846 and 841(a)(1) - Conspiracy to Distribute Methamphetamine; Title 18 United States Code, Section 2 - Aiding and Abetting |
| Defendants. ) | |

The undersigned complainant being duly sworn states:

Beginning at a date unknown and continuing up to and including April 17, 2007, within the Southern District of California, and elsewhere, defendants JOSE ALBERTO MARQUEZ, aka Bat, JULIA MORONES, and MARIA MADRIAGA, aka Kika, did knowingly and intentionally conspire with each other, and other persons known and unknown, to distribute 50 grams and more of methamphetamine (actual), a Schedule II Controlled Substance; in violation of Title 21 United States Code, Sections 846 and 841(a)(1), and Title 18, United States Code, Section 2.

And the complainant states that this complaint is based on the attached affidavit, incorporated herein by reference.

_____
Signature of Complainant

Sworn to before me and subscribed in my presence this ___4th___ day of June, 2008.

SEALED by Order of
Magistrate Judge Leo S. Papas
Date ___JUN 4 2008___

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

## A F F I D A V I T

ASIANO B. DAVILA, being duly sworn, states:

I am a Special Agent with the Federal Bureau of Investigation ("FBI"). The following is based on my own investigation, oral and written reports by other law enforcement officers, physical and electronic surveillance, interviews, subpoenaed and public records, database checks, searches, phone analysis, and other investigation. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the complaint. Conversations below are set forth in substance unless noted, and most call descriptions are based on summaries prepared by monitors, not final transcripts. My interpretations of certain statements are set forth in brackets. Dates and times are approximate.

On April 17, 2007, a FBI confidential informant with ties to the Mexican Mafia prison gang participated in a methamphetamine deal in San Diego involving approximately 6 ounces of methamphetamine. The methamphetamine deal was orchestrated by incarcerated Mexican Mafia member Jose Alberto "Bat" Marquez. The conspiracy to distribute the methamphetamine involved defendants Marquez (who is presently in custody on pending federal drug trafficking charges), Julia Morones (who conducted Mexican Mafia activities on behalf of Marquez in the San Diego area), and Maria "Kika" Madriaga (the wife of incarcerated Mexican Mafia member Frank "Chino" Madriaga).

On April 13, 2007, at approximately 9:23 p.m., Marquez called Madriaga – Marquez had access to phones in his penal facility at the time of the deal. Marquez's telephone calls from the facility were recorded per facility procedures. During the recorded call, Madriaga told Marquez that she did not want the FBI's confidential informant coming to her house; Madriaga claimed that the informant was in conflict with her husband Frank Madriaga. Marquez told Madriaga that she did not need to worry about the informant. In a subsequent call minutes later, Marquez called Morones, and told her that Madriaga "doesn't want, they don't want [the FBI's informant] to get involved." Marquez further told Morones that Madriaga "is going to help you out. Just go by yourself, you know what I mean, that's better anyway. Then you can just give it [the methamphetamine] to him [the informant] later, you know."

On April 14, 2007, at approximately 3:40 p.m., in a jail call, Morones told Marquez that Morones had met with "Kika," Madriaga. Morones further stated that Madriaga told Morones that Madriaga wanted Morones "to meet with her friend [Madriaga's source for methamphetamine]." Marquez thereafter asked when Morones "is going to go with her [do a deal with]" Madriaga. Morones replied "whenever I get some money together."

1

On April 17, 2007, at approximately 3:25 p.m., Marquez called Morones from custody. Morones stated that "Kika [Madriaga] called" and that Madriaga had told him: "That guy just called her right now [Madriaga's source for methamphetamine]." In a call, approximately 30 minutes later, Marquez asked Morones: "So are you going to see Kika later on?" Morones replied that the FBI's informant "wanted to know if that was going to happen or what," and Morones told the informant that "it'll happen right when I get outta work." Marquez ended the call by stating that he would call Morones "after work to see what happened."

At approximately 6:27 p.m., Morones arrived at an apartment used by the informant. Morones was provided with approximately $3,000 by the informant to purchase methamphetamine. Morones subsequently left the informant's apartment and drove to the street in Chula Vista where Madriaga lives; Morones was followed to this area by law enforcement officers. Officers were unable to follow Morones to her specific location on the street as the street is a cul-de-sac and agents were concerned about being detected. Morones was subsequently observed leaving the area, and was followed back to the informant's apartment.

At approximately 7:28 p.m., Morones entered the informant's apartment with a plastic shopping bag. The informant and two street gang members were present in the apartment at that time. The actions in the apartment were audio and video recorded. Morones provided the informant the shopping bag which contained a box of cereal. The informant opened the cereal box and removed a sealed plastic bag which contained methamphetamine. The informant subsequently weighed and split-up the methamphetamine; to accomplish this task, the informant used a scale provided by Morones. The informant kept approximately a quarter pound (4 ounces) of the methamphetamine, while Morones received approximately 2 ounces of the methamphetamine, which had been broken-up into smaller packages by the informant at Morones' direction.

While Morones was in the informant's apartment, at approximately 8 p.m., Marquez called Morones on her cell phone. Morones told Marquez: "I just did that with her [did the methamphetamine deal with Madriaga]." Morones also told Marquez that: "Tomorrow, that dude [Madriaga's source of methamphetamine] will have more." Morones further stated that Morones "went down there with her [Madriaga] and then I came back to over here to bring it." Morones also described the location where Madriaga lived. In addition, Morones noted that Madriaga's residence had an extensive security camera system – this fact is also consistent with information concerning Madriaga's residence. During the conversation, Marquez instructed Morones to use another associate of Marquez for further deals with Madriaga. Marquez also asked if it was a "good deal?" Morones responded that the price "went up $50 from last time."

On April 17, 2007, following the meeting with Morones, the informant subsequently provided agents with the methamphetamine that the informant had obtained from Morones which included approximately 111 grams of methamphetamine (containing **55.8 grams of methamphetamine actual**).

2

On April 18, 2007, at approximately 6:44 p.m., in a jail call, Marquez told Morones to tell "Raccoon" [believed to be a source of supply for methamphetamine] to "make that shit happen [participate in a methamphetamine transaction]." Marquez continued: "I need that, I got to get going [Marquez wanted to conduct further drug deals]." Marquez also instructed that if "Raccoon" could not arrange anything for Morones then Morones should "do that with Kika, you know." Morones responded that she did not need to "get a hold of her [Madriaga] no more" because Madriaga had given her "the number" for Madriaga's source of methamphetamine, and "the dude called me today." Morones further stated that she "can go straight through him [the source for the methamphetamine] now."

On April 21, 2007, at approximately 11:07 p.m., in a call from custody, Morones told Marquez that one of Marquez's criminal associates had not contacted "Raccoon," a potential source for drugs. Marquez stated that the associate probably did not call "Raccoon" "because he [the associate] did that [a methamphetamine deal] with Kika." Marquez then had Morones set-up a three-way call with the associate's wife. Marquez told his associate's wife: "That knucklehead, they are waiting for him to call and he never calls." The woman responded that "everything already went through [the methamphetamine deal with Madriaga had occurred]." Marquez replied that "yeah with homegirl, yeah, but I'm saying still, you know, have another door too . . . the more doors open the better, you know, you know, more friends."

SEALING REQUEST: Because this is an ongoing investigation and premature disclosure of the investigation and this affidavit could endanger agents and officers, cause suspects to flee, and cause the destruction of evidence, I request that this affidavit, all arrest warrants, the complaint, and all other associated court records be sealed until further court order.

_____
Asiano B. Davila, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on June 4, 2008.

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

SEALED by Order of
Magistrate Judge Leo S. Papas
Date JUN 4 2008

Leo S. Papas

3

**ORDERED SEALED BY COURT**

ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. '08 MJ 1756 |
| Plaintiff, | ) | |
| v. | ) | **ORDER SEALING COMPLAINT AND ARREST WARRANTS** |
| JOSE ALBERTO MARQUEZ, et al., | ) | |
| Defendants. | ) | |

Upon motion of the UNITED STATES OF AMERICA and good cause appearing,

IT IS HEREBY ORDERED that the Complaint (along with the affidavit in support of the Complaint), arrest warrants for all of the named defendants, and this order, be sealed until further order of the Court.

DATED: JUN 4 2008

HON. LEO S. PAPAS
United States Magistrate Judge

Presented by:

KAREN P. HEWITT
United States Attorney

MICHAEL J. CROWLEY
Assistant U.S. Attorney

SEALED by Order of
Magistrate Judge Leo S. Papas
Date      JUN 4 2008

Leo S. Papas
US Magistrate